# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:19-cv-00117-MR

MARK EMMANUEL MARTINEZ, )
)
Petitioner, )
)           **MEMORANDUM OF**
vs.         )           **DECISION AND ORDER**
)
ERIK HOOKS, )
)
Respondent. )
_____ )

**THIS MATTER** is before the Court on the Respondent's Motion to Dismiss on Statute of Limitations and Procedural Bar Grounds [Doc. 13] and the Petitioner's Motions Requesting Admissions [Docs. 10, 17].

## I.     BACKGROUND

Mark Emmanuel Martinez (the "Petitioner") is a prisoner of the State of North Carolina.  On February 13, 2017, the Petitioner pled guilty in Lincoln County Superior Court to statutory rape of a person who is fifteen years of age or younger, indecent liberties with a child, and second-degree kidnapping.  [Doc. 14-2 at 3].  On that same day, the Petitioner was

sentenced to 168-262 months in prison. [Doc. 14-3 at 2]. The Petitioner did not appeal.[1] [See Doc. 1 at 2].

On September 25, 2018, the Petitioner filed a Motion for Appropriate Relief ("MAR") in Lincoln County Superior Court. [Doc. 14-4]. On December 18, 2018, the court ordered the parties to provide "the verbatim transcript from the [Petitioner's] guilty plea and the discovery exchanged between the parties in [the Petitioner's] case" to determine whether an evidentiary hearing was required for the court to dispose of the MAR. [Doc. 14-5]. On May 6, 2019, the court denied the Petitioner's MAR. [Doc. 1-1 at 25-27]. On July 23, 2019, the Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals seeking review of the denial of his MAR. [Id. at 1]. That petition was denied on August 5, 2019. [Id.]. The Petitioner did not seek further state-court review of the denial of his MAR. [See Doc. 1 at 4].

On August 14, 2019, the Petitioner, proceeding *pro se*, filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[2] [Id. at 27].

---

[1] Because the Petitioner left the form question in the § 2254 Petition regarding direct appeal blank, and the Court was unable to find any evidence of a direct appeal in state court records, the Court concludes that the Petitioner did not file a direct appeal of his February 13, 2017 conviction.

[2] An inmate's pleading is filed at the time it is delivered to prison authorities for mailing to the court clerk. Houston v. Lack, 487 U.S. 266, 270 (1988). The Petitioner stated, under the penalty of perjury, that he delivered the § 2254 Petition to prison authorities for mailing on August 14, 2019. [Doc. 1 at 27]. Accordingly, the Court finds that the § 2254 Petition was filed on August 14, 2019.

The § 2254 Petition was docketed in the Eastern District of North Carolina on September 3, 2019, and the § 2254 Petition was transferred to this Court on that same day. [Doc. 3]. The Petitioner asserts the following grounds for relief: (1) that the State tampered with cell phone records extracted from the victim's phone; (2) that the State denied the Petitioner his right to present evidence in his defense at trial and failed to suppress evidence that the State tampered with; (3) that the Petitioner received ineffective assistance of trial counsel and ineffective assistance of post-conviction counsel; (4) that the State denied the Petitioner his right to direct appeal based on the terms of the Petitioner's plea agreement; (5) that the victim wrote a statement at the end of 2017 that asserted the Petitioner's innocence; and (6) that the MAR court and the North Carolina Court of Appeals "have absolutely no response" to the grounds raised by the Petitioner. [Doc. 1 at 5-23].

On October 13, 2020, the Court, after conducting an initial review of the § 2254 Petition pursuant to the Rules Governing Section 2254 Cases in the United States District Courts, ordered the Respondent to answer or otherwise respond to the § 2254 Petition. [Doc. 5].

On December 9, 2020, the Petitioner filed a motion requesting that the Court order the Respondent to make certain admissions. [Doc. 10]. The Respondent responded to that motion on January 4, 2021. [Doc. 11].

On January 25, 2021, the Respondent filed an "Initial Answer" to the § 2254 Petition, a motion to dismiss the § 2254 Petition on statute of limitations and procedural bar grounds, a motion to seal exhibits, and memoranda in support of these motions. [Docs. 12, 13, 14, 15, 16]. On February 1, 2021, the Court granted the Respondent's motion to seal exhibits. [Doc. 20].

On January 22, 2021, the Petitioner filed a second motion requesting that the Court order the Respondent to make certain admissions. [Doc. 17]. The Respondent responded to that motion on February 5, 2021. [Doc. 21].

On March 2, 2021, the Petitioner responded to the Respondent's initial answer to the § 2254 Petition and motion to dismiss arguing that he was entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(B), 2244(d)(1)(D), and 2244(d)(2), and that he was also entitled to equitable tolling. [Doc. 22].

On March 10, 2021, the Respondent filed a reply arguing that that the § 2254 Petition was untimely and that the Petitioner was not entitled to statutory or equitable tolling. [Doc. 23]. On March 29, 2021, the Petitioner filed a surreply.[3] [Doc. 25].

The pending motions are now ripe for review.

---

[3] Surreplies are generally not permitted and may only be filed with leave of the Court. See LCvR 7.1(e); Miller v. Ingles, No. 1:09cv200, 2009 WL 4325218, at *6 (W.D.N.C. Nov. 24, 2009). The Petitioner did not seek leave of the Court to file his surreply. In light of the Petitioner's *pro se* status, however, the Court will not strike the surreply and will consider the substance of the briefing in considering the Respondent's motion to dismiss.

4

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D). The limitation period is tolled during the pendency of a properly filed state post-conviction action. Id. § 2244(d)(2).

## III.   DISCUSSION

### A.   The Respondent's Motion to Dismiss

#### 1.   Statute of Limitations

The Respondent argues that the § 2254 Petition is barred by the one-year statute of limitations in § 2244(d)(1).  [Doc. 13].

The Petitioner's Judgment [Doc. 14-3] was entered and filed on February 13, 2017.  As a result, the Petitioner's convictions became final on February 27, 2017, when the fourteen-day period for seeking direct review expired.  See N.C. R. App. P. 4(a)(2); 28 U.S.C. § 2244(d)(1)(A).  Once the Petitioner's convictions became final, AEDPA's one-year statute of limitations ran until February 27, 2018.

While the one-year limitations period may be tolled during the pendency of a "properly filed application for State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), this section does not toll the limitations period in the Petitioner's case because the Petitioner did not file his MAR until seven months after the one-year limitations period had expired. [Doc. 14-4].  Section 2244(d)(2) can only toll a running limitations period; it cannot revive a limitations period that has already expired.  See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).  Because the Petitioner did not file his MAR until September 25, 2018, a full seven months after AEDPA's one-

6

year statute of limitations expired, § 2244(d)(2) has no effect on the timeliness of the § 2254 Petition.[4]

Therefore, the § 2254 Petition, filed on August 14, 2019, is untimely and subject to dismissal unless the Petitioner can demonstrate that he is entitled to statutory tolling under § 2244(d)(1)(B)-(D), or that equitable tolling applies. The Petitioner asserts entitlement to statutory and equitable tolling.[5] [Doc. 22 at 1]. The Court will evaluate each of the Petitioner's tolling arguments in turn.

### a.  Section 2244(d)(1)(B)

Section 2244(d)(1)(B) tolls AEDPA's one-year statute of limitations until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."  28 U.S.C. § 2244(d)(1)(B).

---

[4] In his response to the Respondent's motion to dismiss, the Petitioner alleges that the North Carolina Center for Actual Innocence and the Innocence Inquiry Commission's involvement in his case interfered with his ability to file his MAR.  [Doc. 22 at 1-3].  The Petitioner, however, has made no legal argument for how the alleged interference affects the commencement of statutory tolling under § 2244(d)(2).

[5] The Petitioner makes a fleeting reference to an "actual innocence" theory in his response to the motion to dismiss.  [Doc. 22 at 7].  But, because the Petitioner offers no meaningful argument for actual innocence, the Court will not address this theory.

Here, the Petitioner's only reference to § 2244(d)(1)(B) relates to the Lincoln County Clerk of Court's delay in generating the Petitioner's plea hearing transcript. [Doc. 22 at 4]. Regarding the necessity of this transcript, the Petitioner states that "[e]very post-conviction Attorney, post-conviction review process in the State Courts, and the Innocence Inquiry Commission, request the transcript or require it." [Id.]. The Petitioner alleges that his family "attempted to reach the Clerk of Court and the Court Reporter in order to request a copy of the verbatim transcript during the entire calendar year of 2017, calling every few weeks requesting a way to obtain a copy of the transcript." [Id.]. The transcript was delivered to the Petitioner via email on April 18, 2018. [Docs. 22 at 4, 22-1 at 5].

Importantly, the Petitioner does not assert that procuring such a transcript is a requirement for filing a § 2254 petition, as it is not. See Rules 2-3, Rules Governing Section 2254 Cases in the U.S. District Courts. Likewise, the Petitioner does not assert that the transcript was a prerequisite for filing his MAR, as he filed his MAR without attaching the transcript, even though he had already obtained it. [See Doc. 14-4 at 2-5]. It was not until December 14, 2018, almost three months after the Petitioner filed his MAR, that the superior court requested a copy of the transcript to assess whether an evidentiary hearing was required. [See Doc. 14-5 at 2].

Section 2244(d)(1)(B) requires an "impediment to filing" a § 2254 Petition "created by State action in violation of the Constitution or laws of the United States." 28 U.S.C. § 2244(d)(1)(B); see Hill v. Braxton, 277 F.3d 701, 706-07 (4th Cir. 2002) (citing 28 U.S.C. § 2244(d)(1)(B)). The Petitioner, however, only asserts a state delay that presented a difficulty in acquiring post-conviction counsel and allegedly also created a delay in obtaining post-conviction review in state court after filing his MAR. [See Doc. 22 at 4 ("Every prospective post-conviction attorney, post-conviction review process in State Courts, and the Innocence Inquiry Commission, request the transcript or require it.")].

The Petitioner first argues that he was unable to obtain post-conviction counsel without the transcript, and he is therefore entitled to tolling under § 2244(d)(1)(B). There is, however, no constitutional right to counsel in federal habeas proceedings. Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003) (en banc) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987)). While 18 U.S.C. § 3599(a)(2) "guarantees federal habeas petitioners on death row the right to federally funded counsel," Ryan v. Gonzales, 568 U.S. 57, 65 (2013) (footnote omitted), this provision does not apply to the Petitioner because he is not on death row. Because the Petitioner is not entitled to counsel in his federal habeas case, a state delay in delivering the transcript,

9

which allegedly made it more difficult for the Petitioner to obtain post-conviction counsel, cannot constitute a "State action in violation of the Constitution or laws of the United States."   28 U.S.C. § 2244(d)(1)(B). Nothing prevented the Petitioner from filing the § 2254 Petition, even without counsel, before the statute of limitations expired.   Therefore, the Petitioner's first § 2244(d)(1)(B) argument fails.

The Petitioner next argues that he was unable to seek state post-conviction review without the transcript, and he is therefore entitled to tolling under § 2244(d)(1)(B).  The Petitioner received the transcript by email on April 18, 2018.  [Doc. 22-1 at 5].  But the Petitioner then waited until September 25, 2018, to file his MAR, and then did so without attaching the transcript.  [Doc. 14-4 at 4].  After conducting an initial review of the Petitioner's MAR, the superior court requested a copy of the transcript to determine whether an evidentiary hearing was required.  [See Doc. 14-5 at 2].  Therefore, the absence of a transcript was not an impediment to filing the Petitioner's MAR because the Petitioner was able to file the MAR, and obtain initial review of the MAR, without attaching the transcript.  [See Docs. 14-4, 14-5].  Moreover, § 2244(d)(1)(B) refers to an impediment to filing for *federal* habeas relief, not *state* post-conviction review.  See Wood, 487 F.3d at 7-8.

Because the Petitioner fails to explain how Lincoln County's delay in delivering the transcript is an unconstitutional State action that prevented the Petitioner from filing the § 2254 Petition before the statute of limitations expired, the Petitioner is not entitled to tolling under § 2244(d)(1)(B).

**b.    Section 2244(d)(1)(D)**

Section 2244(d)(1)(D) tolls AEDPA's one-year statute of limitations until "the date on which the factual predicate of the claim or claims presented [in the habeas petition] could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

AEDPA does not define the term "factual predicate."  Rivas v. Fischer, 687 F.3d 514, 535 (2d Cir. 2012).  "Those courts that have given meaning to the term [factual predicate] agree that a factual predicate consists only of the 'vital facts' underlying the claim."  Id.  (quoting McAleese v. Brennan, 483 F.3d 206, 214 (3d Cir. 2007); Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir.1998)).  "Vital facts"  are those facts "without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases . . . or Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ."  Id.  Additional facts that "merely support[] or strengthen[] a claim that could have been properly stated without" such facts do not create "a new 'factual predicate' for purposes of triggering the statute of limitations under §

11

2244(d)(1)(D)." Id. (citations omitted). Furthermore, "[c]onclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." Id.

"Due diligence does not require the maximum feasible diligence," but it "does require reasonable diligence in the circumstances." Gray v. Ballard, 848 F.3d 318, 322 (4th Cir. 2017) (internal quotation marks omitted) (quoting Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)). Therefore, "by its terms, § 2244(d)(1)(D) is triggered not when a petitioner actually learns of some pertinent information from newly discovered evidence; rather, it commences when he '*could have* . . . discovered' it." Sawyer v. Kiser, No. 1:16-cv-00040 (GBL/TCB), 2017 WL 631574, at *4 (E.D. Va. Feb. 15, 2017).

The Petitioner argues that he could not have discovered the factual basis for the claims in the § 2254 Petition until March 29, 2018. [See Doc. 22 at 7, 16]. The Petitioner contends that two pieces of "new evidence," taken together, prove that law enforcement "coerced the victim into making the initial, untruthful accusation that she and [the] Petitioner had sex." [Id. at 6]. The first piece of evidence is a letter allegedly written by the victim and received by the Petitioner's family on January 16, 2018. [Doc. 22-1 at 2-3]. The second piece of evidence is a phone conversation between the

Petitioner and "the Detective in the instant case, Dan Renn," which allegedly occurred on March 29, 2018. [Doc. 22 at 6].

On one side, the letter reads:

> [The Petitioner] doesnt [sic] deserve what they did to him. I tried several times to give a statement saying he is innocent but they refused to take it, they said they didnt [sic] need it. [The Petitioner] and I did not have sex and he did not send me any sexual pictures and I wasnt [sic] kidnapped. Please let me know if there is anything I can do on the seat of tuition.

[Doc. 22-1 at 2]. On the other side, the letter reads:

> I hate what they did to an inocent [sic] person. I was so young and I felt so lonely so was then when I create a new face bock [sic] page with a new age, it was then when I met [the Petitioner], he was a wonderful UNC Student. I lie to him the very beginning. But I never thougt [sic] the things will turn so [illegible]. then the police D. Renn make me fell [sic] so afraid because he threatened me every time he came to see us. that's why my mom told me to do and said what Renn said. So he told me that [the Petitioner] likes to make young girls fall in love with him then take them to Mexico and sell them. Renn make me believe that [the Petitioner] was a wanted person, and after he was accused and convicted, Renn never come to tell me the real true was then I decide to contact the family, because I cannot sleep. I could not have a normal life I cannot continue with my life knowing that I contribute to damage [the Petitioner's] life.

[Id. at 3].

The second piece of evidence was a phone conversation between the Petitioner and "the detective in the instant case, Dan Renn," which allegedly occurred on March 29, 2018. [Doc. 22 at 6]. The Petitioner alleges that the detective admitted, during that call, "to coercing the victim." [Id.]. The Petitioner contends that this phone call "serves as a factual predicate" that was "never . . . possessed by the Petitioner, nor was it a fact that [the] Petitioner could prove prior to [March 29, 2018]." [Id. at 7].

Here, both pieces of evidence relate to the claim that Detective Renn coerced or threatened the victim. Pretrial discovery and the Petitioner's own statements show that the Petitioner was aware of evidence of Detective Renn's coercing or threatening the victim before the Petitioner pled guilty. In his response to the motion to dismiss, the Petitioner asserts that "during the pendency of the case," the Petitioner "requested of the State, through counsel, that another detective speak to the victim because she had expressed to [the] Petitioner that she was being threatened." [Id. at 14]. Furthermore, text messages exchanged between the Petitioner and the victim before the Petitioner pled guilty showed that the Petitioner was aware that the victim claimed she was being threatened and coerced into making false statements incriminating the Petitioner. [See Doc. 14-6 at 9-13].

The Petitioner pled guilty notwithstanding the fact that he had substantial material with which he could have cross-examined the victim regarding whether she had been coerced and whether her accusations were false. The Petitioner also knew that the victim may have been uncooperative with the prosecution on the witness stand. The fact that the letter and the phone call provided additional support for the claim that Detective Renn coerced the victim into lying does not change the fact that the Petitioner, by his own admission, was aware of such facts before he pled guilty. New evidence supporting an old point is not a new factual predicate. See Rivas, 687 F.3d at 535 (holding that additional facts merely supporting a previously known argument are not vital facts).

Because neither the letter, nor the phone conversation, nor the combination of the two, can be characterized as creating a new factual predicate, there is no need to determine whether these pieces of evidence could have been obtained, "through the exercise of due diligence," before the statute of limitations for filing the § 2254 Petition expired. 28 U.S.C § 2244(d)(1)(D). Before he pled guilty, the Petitioner knew the "vital facts" of his claim that Detective Renn coerced the victim into making incriminating statements against the Petitioner. Rivas, 687 F.3d at 535. Petitioner balanced that factual predicate against the incriminating evidence,

particularly the Victim's test messages, that supported her initial accusations. Having done so, Petitioner chose to plead guilty. The fact that Petitioner later accumulated some additional cross examination material is no basis for relief. Therefore, the Petitioner's § 2244(d)(1)(D) argument fails.

### c. Equitable Tolling

Equitable tolling of the statute of limitations for an otherwise untimely § 2254 petition may apply where the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" to prevent timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). Equitable tolling is appropriate in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse, 339 F.3d at 246 (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)).

The Petitioner contends that he is entitled to equitable tolling because his plea hearing transcript was unavailable "for an entire year," and, as a result, the Petitioner was allegedly unable to "confirm and review the alleged 'conference' that contained the trial judge's evidentiary ruling"; only four months passed between the Petitioner's sentencing and "find[ing] other

avenues for his case"; the Petitioner spent time "search[ing] for competent counsel"; the Petitioner received ineffective assistance of post-conviction counsel; and the Petitioner's trial counsel refused to represent the Petitioner on direct appeal. [Docs. 1 at 26, 22 at 5].

None of the Petitioner's grounds for relief, considered individually or together, support equitable tolling. First, a petitioner's lack of access to his trial or plea transcript generally does not constitute an extraordinary circumstance warranting equitable tolling. See Lloyd v. Van Natta, 296 F.3d 630, 634 (7th Cir. 2002) (collecting cases). Furthermore, even if Lincoln County's handling of the Petitioner's plea hearing transcript were an extraordinary circumstance, the five-month lag between obtaining the transcript and filing the MAR and the sixteen-month delay between obtaining the transcript and filing the § 2254 Petition undermine any contention that the Petitioner diligently pursued his rights after obtaining the transcript. See Holland, 560 U.S. at 653 (emphasizing that "Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court" on "the *very day* that Holland discovered that his AEDPA clock had expired due to [counsel's] failings"). Moreover, the Petitioner's reference to "only four months" elapsing between his sentencing and his attempt to "find other

avenues for his case" [Doc. 22 at 5], hardly compares to the single day turnaround emphasized in Holland. See 560 U.S. at 653.

The Petitioner's arguments related to "search[ing] for competent counsel" and receiving "ineffective assistance of post-conviction counsel" are also without merit. [Doc. 1 at 26]. There is no constitutional right to counsel in post-conviction proceedings. Finley, 481 U.S. at 555-56. And it is common for habeas petitioners to struggle to find counsel or to proceed *pro se*. See Jihad v. Hvass, 267 F.3d 803, 806-07 (8th Cir. 2001). Thus, the fact that the Petitioner spent time searching for "competent counsel" and was ultimately required to proceed *pro se*, does not warrant equitable tolling. [Doc. 1 at 26]; see Jihad, 267 F.3d at 807.

Finally, while an attorney abandoning a client may create grounds for equitable tolling, Holland, 560 U.S. at 652-53, the Petitioner fails to demonstrate any causal connection between trial counsel's refusal to represent him on direct appeal and his untimely § 2254 Petition. Unlike in Holland, where the petitioner's post-conviction counsel failed to timely file Holland's § 2254 petition despite Holland's "numerous letters," the Petitioner offers no explanation for how trial counsel's failure to represent him on direct appeal in 2017 caused the Petitioner to be unable to file the § 2254 Petition until 2019. 560 U.S. at 653. Furthermore, because the Petitioner pled guilty,

he waived his right to direct appeal with regard to all issues except sentencing issues, the denial of a motion to suppress, or an unsuccessful motion to withdraw a guilty plea. State v. Pimental, 153 N.C. App. 69, 73-74, 568 S.E.2d 867, 870 (2002) (citation omitted) (citing N.C. Gen Stat. § 15A-1444(e)). Because the Petitioner has asserted no grounds for direct appeal on any of these issues, he cannot claim prejudice from trial counsel's alleged refusal to represent the Petitioner on direct appeal. Therefore, trial counsel's conduct was not an extraordinary circumstance preventing timely filing of the § 2254 Petition. See Holland, 560 U.S. at 649.

Because the grounds the Petitioner asserts for equitable tolling do not show diligent pursuit of the Petitioner's rights and extraordinary circumstances preventing timely filing, id., the Petitioner's equitable tolling argument fails.

Therefore, neither statutory nor equitable tolling applies in the Petitioner's case, and the § 2254 Petition is untimely under § 2244(d)(1)(A).

## 2. Procedural Default

The Respondent moves in the alternative to dismiss the § 2254 Petition on procedural default grounds. [Doc. 13]. Because the § 2254 Petition shall be dismissal as untimely, it is not necessary to address the Respondent's procedural default argument.

19

**B.    The Petitioner's Motions Requesting Admissions**

The Petitioner moves the Court for an Order requiring the Respondent to admit certain facts as true. [See Docs. 10, 17]. As set forth above, the § 2254 Petition is untimely and shall be dismissed as time barred. Because the underlying § 2254 Petition shall be dismissed as time barred, the Petitioner's Motions Requesting Admissions are denied.

**IV.    CONCLUSION**

For the reasons stated herein, the § 2254 Petition is untimely and barred by § 2244(d)(1)(A)'s statute of limitations. The Petitioner fails to establish entitlement to either statutory or equitable tolling. Accordingly, the § 2254 Petition is dismissed as time barred, and the Petitioner's Motions Requesting Admissions are denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is

debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The Respondent's Motion to Dismiss on Statute of Limitations and Procedural Bar Grounds [Doc. 13] is **GRANTED**;

(2) The § 2254 Petition [Doc. 1] is **DISMISSED**;

(3) The Petitioner's Motions Requesting Admissions [Docs. 10, 17] are **DENIED**; and

(4) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED.**

Signed: November 2, 2021

Martin Reidinger
Chief United States District Judge